UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FREDERICK JOHN MEIER, II,

    Plaintiff,

v.                                                                          Case No: 8:16-cv-1186-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

Plaintiff, Frederick John Meier, II, seeks judicial review of the denial of his claims for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and did not employ proper legal standards, the decision is reversed in part and remanded for further consideration.

## **BACKGROUND**

### **A.    Procedural Background**

Plaintiff filed applications for disability insurance benefits and supplemental security income on December 7, 2012. (Tr. 233–43.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 117–27, 130–42.) Plaintiff then requested an administrative hearing. (Tr. 144–46.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 41–70.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 19–40.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals

Council denied. (Tr. 15–18.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.   Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1974, claimed disability beginning on September 28, 2012. (Tr. 71.) Plaintiff has a high school education. (Tr. 34.) Plaintiff's past relevant work experience included work as a warehouse checker, grill cook, equipment station worker, and meter reader. (Tr. 34.) Plaintiff alleged disability due to Asperger's syndrome, depression, anxiety, a personality disorder, and cognitive deficits. (Tr. 71.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since September 28, 2012, the alleged onset date. (Tr. 24.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: Asperger's syndrome, autistic spectrum disorder, depressive disorder (NOS), and cannabis and cocaine dependence. (Tr. 24.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25.) The ALJ then concluded that Plaintiff retained the following residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: but as a result of his multiple mental disorders, there should be no work with the general public and no jobs requiring production quotas. Moreover, he would be limited to simple 1, 2, 3 step jobs (no semi-skilled or skilled work).

(Tr. 26.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 28–29.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 34.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a dishwasher, fruit grader, and car wash attendant. (Tr. 35.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 35.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past

relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ's RFC assessment is not supported by substantial evidence; and (2) the ALJ erred in according little weight to the opinion of consultative examiner Dr. Gregory Marone. For the reasons that follow, Plaintiff's second contention warrants reversal.

**A.     RFC Assessment**

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ based his RFC on the opinions of state agency psychologists Dr. Julie Bruno and Dr. Jane Cormier. Plaintiff contends that these consultants' opinions cannot constitute substantial evidence upon which the ALJ may base Plaintiff's RFC. (Dkt. 18 at 15–16.) Plaintiff does not, however, specify additional limitations the ALJ should have included in his RFC assessment.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is "the most" a claimant "can still do despite [his or her] limitations." *Id.* § 404.1545(a)(1); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). To determine a claimant's RFC, an ALJ assesses all of the relevant evidence of record, and the ALJ considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(1), (a)(4). The ALJ will consider the limiting effects of all the claimant's impairments, even those that are not severe, in determining the RFC. *Id.* § 404.1545(e). Importantly, while all medical opinions, including opinions regarding a claimant's RFC, must be considered, a claimant's RFC is a decision "reserved to the Commissioner." *Id.* § 404.1527(d)(2); *see Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877–78 (11th Cir. 2013).

While ALJs "are not required to adopt" prior administrative medical findings from state agency psychological consultants, "they must consider this evidence" because state agency consultants "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). A nonexamining, reviewing physician's opinion cannot constitute good cause to give a treating physician's opinion less than substantial weight. *Martinez v. Comm'r of Soc. Sec.*, 660 F. App'x 787, 791 (11th Cir. 2016). Plaintiff does not argue, however, that the ALJ rejected the opinion of a treating physician in favor of that of a nonexamining physician because Dr. Marone was not a treating physician. Nonetheless, as Plaintiff argues, "reports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision." *Spencer on Behalf of Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

Contrary to Plaintiff's argument, the ALJ's RFC assessment is supported by substantial evidence and was not based solely on the opinions of Dr. Bruno and Dr. Cormier. In assessing Plaintiff's RFC, the ALJ considered Plaintiff's testimony, Plaintiff's father's testimony, treatment records from the Florida Center for Addictions and Dual Diagnosis Disorders ("Florida Center"), opinions of consultative examiners, and Plaintiff's daily activities. (Tr. 26–34.) First, after Plaintiff was discharged from the Florida Center, in January, May, July, and December 2013, he reported that he was doing well in follow-up visits. (Tr. 419, 420, 429–31, 438.) In March 2014, Plaintiff reported that his medications were "working fine," and in July 2014 he stated that his anxiety and depression were controlled and that he was sleeping well. (Tr. 437, 439.) Further, the ALJ noted that Plaintiff's global assessment of functioning scores contained in his treatment records, although not dispositive, showed a general upward trend and reflected mild symptoms. (Tr. 31.)

Next, the ALJ appropriately considered Plaintiff's father's testimony regarding Plaintiff's limitations and daily activities. *See* 20 C.F.R. § 404.1545(a)(3) ("We will also consider descriptions and observations of your limitations from your impairment(s) . . . provided by you, your family, neighbors, friends, or other persons."). First, the ALJ concluded that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his impairments from his depression were belied by treatment records showing that this condition was treated with medication. (Tr. 32.) Next, the ALJ found that Plaintiff's testimony regarding the limiting effects of his symptoms from his Asperger's syndrome were supported only by the opinion of Dr. Marone, which the ALJ did not accord controlling weight. (Tr. 33.) Further, the ALJ found Plaintiff's testimony about his limitations inconsistent with Plaintiff's testimony that he tends to his personal care, does household chores, drives himself to do groceries, and attends trivia games on a regular basis. (Tr. 33.) And although the ALJ considered Plaintiff's father's testimony, he declined to assign it significant weight because it was inconsistent with Plaintiff's treatment records. (Tr. 32.)

Finally, the ALJ considered the opinions of consultative examiner Dr. Marone and nonexamining physicians Dr. Bruno and Dr. Cormier. (Tr. 31, 32.) The ALJ did not accord Dr. Marone's opinion significant weight because he determined that it relied too heavily on Plaintiff's subjective reports of symptoms and limitations. *See* discussion *infra* § B. While the ALJ found Plaintiff capable of performing "simple 1, 2, 3 step jobs," but incapable of performing work requiring interaction with the general public or meeting production quotas (Tr. 26), Dr. Marone opined that Plaintiff is totally incapable of maintaining employment because of his potentially confrontational work style and slow work pace (Tr. 445). As to Dr. Bruno and Dr. Cormier, the ALJ accorded their opinions significant weight and used portions of these opinions in his RFC assessment. (Tr. 32.) Specifically, the ALJ stated that he "limited the claimant to unskilled work

with no work with the general public and no jobs requiring production quotas" based on the opinions of Dr. Bruno and Dr. Cormier. (Tr. 32.)

Turning to these opinions, as part of the initial denial of benefits, Dr. Bruno found Plaintiff capable of performing "1-2 step simple tasks" over a forty-hour work week. (Tr. 77.) Further, Dr. Bruno found that Plaintiff's social interactions in work settings should be limited. (Tr. 78.) On reconsideration, Dr. Cormier noted that Plaintiff "does not report any changes or worsening" in his impairments or limitations and that treatment notes from after the denial of benefits show that Plaintiff was well groomed, had normal speech, and was oriented and logical. (Tr. 96, 98.) She concluded that Plaintiff may experience difficulties with "sustained attention and concentration" and interference during the workday "due to psychologically-based symptoms." (Tr. 100.) She also noted that Plaintiff has limitations in terms of working with coworkers and the general public. (Tr. 101.) Dr. Cormier concluded that Plaintiff "appears capable of performing routine, repetitive tasks on a sustained and independent basis and in a socially appropriate manner as so motivated." (Tr. 101.)

Accordingly, a review of the ALJ's decision shows that although the ALJ considered the opinions of the nonexamining consultants in formulating Plaintiff's RFC, these opinions did not form the sole basis of his RFC assessment. And, importantly, a review of the evidence demonstrates that the ALJ's RFC finding is supported by substantial evidence. Plaintiff's first contention, therefore, does not warrant reversal. However, as discussed below, the ALJ erred in his evaluation of Dr. Marone's opinion, which requires remand for further explanation of the reasons for according little weight to Dr. Marone's opinion. *See* discussion *infra* § B. The Court recognizes that this reevaluation could affect the ALJ's RFC assessment should the ALJ decide to incorporate Dr. Marone's opinion into the RFC assessment on remand.

### B. Opinion of Dr. Marone

Plaintiff argues that the ALJ erred by according the opinion of a consultative examiner little weight. Specifically, Plaintiff argues that the ALJ considered improper factors in discrediting the opinion of Dr. Marone, which should have been given great weight because it is consistent with the record as a whole. (Dkt. 18 at 16–19.) In response, Defendant argues that Dr. Marone's opinion was not entitled to significant weight because he was a one-time consultative examiner rather than a treating physician. (Dkt. 21 at 11.) Further, Defendant argues that the ALJ's decision to give Dr. Marone's opinion less weight was proper because the opinion is based primarily on Plaintiff's subjective reports and Dr. Marone did not cite supporting objective evidence. (Dkt. 21 at 11.)

In July 2014, Dr. Marone performed a psychological evaluation of Plaintiff for use in Plaintiff's application for social security benefits. (Tr. 440–47.) In reaching his opinions, Dr. Marone relied upon information reported to him by Plaintiff and Plaintiff's father, psychological evaluations performed by school psychologists while Plaintiff was in the special education program, and a psychiatric history report prepared by the facility that treated Plaintiff's drug addiction. (Tr. 440–42.) In his mental status evaluation, Dr. Marone observed although Plaintiff was polite and cooperative, he was also detached, difficult to engage, spoke only using short phrases, had a flat affect and a depressed mood, was rigid in his personality style, and Plaintiff's facial features showed no change in expression. (Tr. 443.) Dr. Marone also noted that while Plaintiff's speech was adequate, it was "characterized by extremely long latencies, a short duration of utterance, and a slow rate of delivery" and his active vocabulary appeared "low average." (Tr. 443.) However, Dr. Marone found that Plaintiff's memory was fair and he could express his thoughts and ideas in a rational, concrete manner. (Tr. 443) Dr. Marone observed that Plaintiff's

judgment, insight, and reasoning, appeared poor and that his interpersonal style implied gross immaturity. (Tr. 443.) Dr. Marone concluded that Plaintiff would be incapable of "maintaining unsupervised independent living." (Tr. 443.)

Dr. Marone diagnosed Plaintiff with autism spectrum disorder, dysthymia, major depression, dependent personality disorder, and cocaine and alcohol abuse and dependency. (Tr. 445.) Although Dr. Marone found Plaintiff capable of obtaining employment, he found that Plaintiff's "ability to maintain employment over even short periods of time is extremely unlikely." (Tr. 445.) Further, Dr. Marone found that Plaintiff may have confrontations with coworkers and customers and would need "significant supervision in everyday living," and that Plaintiff's "work rate will be laboriously slow." (Tr. 445.)

The ALJ reviewed and summarized Dr. Marone's evaluation and opinion. (Tr. 30–31.) The ALJ accorded Dr. Marone's opinion no significant weight, reasoning that Dr. Marone relied heavily on Plaintiff's subjective reports of symptoms and limitations. (Tr. 31.) Further, the ALJ noted that this opinion was not provided as part of Plaintiff's treatment but was obtained as evidence for Plaintiff's application for benefits. (Tr. 31.)

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis, prognosis, ability to perform despite impairments, and physical or mental restrictions. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (internal quotation and citation omitted); 20 C.F.R. § 404.1527(a)(1). When assessing the medical evidence, the ALJ must state, with particularity, the weight afforded to medical opinions and the reasons for such assignment of weight. *Winschel*, 631 F.3d at 1179.

When determining the weight to give a medical opinion, an ALJ considers the following factors: (1) whether the physician performed an examination, (2) the treatment relationship, including the length, nature, and extent of the relationship, (3) the amount of explanation and medical support the physician provides in reaching an opinion, (4) how consistent the physician's opinion is with the entire record, (5) whether the treating physician is a specialist, and (6) any other factors raised by a claimant. 20 C.F.R. § 404.1527(c)(1)–(6).

Because Dr. Marone examined Plaintiff on only one occasion, his opinion is not entitled to the deference that is accorded to opinions of treating physicians. *See Eyre v. Comm'r of Soc. Sec.*, 586 F. App'x 521, 523 (11th Cir. 2014); 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with [a claimant], the weight [the Commissioner] will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions."). Further, Dr. Marone's opinion that Plaintiff would be unable to maintain employment is not a medical opinion but an opinion on an issue "reserved to the Commissioner," and therefore is not entitled to any special significance. 20 C.F.R. § 404.1527(d).

Nonetheless, the ALJ was required to state his reasons for affording Dr. Marone's opinion little weight. *See Winschel*, 631 F.3d at 1179. First, as to the ALJ's reasoning that Dr. Marone's opinion was sought to "generate evidence" for his appeal of the denial of benefits, Plaintiff is correct that this is an improper consideration and may not be the sole basis for rejecting a physician's opinion. *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 987 (11th Cir. 2013) (reasoning that "generating evidence is the purpose of obtaining opinions from medical sources, whether paid for by the Commissioner or by the claimant," and holding that "[t]he fact that [the physician] was a one-time consultative examiner retained by the claimant rather than the

Commissioner is not, standing alone, a valid basis for rejecting his medical opinion"). The ALJ, however, provided another reason for discrediting Dr. Marone's opinion: Dr. Marone's opinion appeared to be based largely on Plaintiff's reports of symptoms and limitations, but the ALJ determined that Plaintiff was not credible. (Tr. 31.)

Dr. Marone's opinion includes reports from Plaintiff and his father regarding his limitations. Specifically, Dr. Marone noted that Plaintiff's father reported Plaintiff's "long term difficulties with social interaction, acquiring friends and applying effective social skills," and difficulties adjusting to change. (Tr. 445.) Plaintiff's father also reported that Plaintiff failed to pay his bills (Tr. 440), and needed reminders to bathe (Tr. 442). Further, Plaintiff reported "chronic difficulties in sustaining employment" and "challenges with both his work performance and in social contact" (Tr. 444), as well as failing to live on his own (Tr. 445). An ALJ may discredit an opinion that is unsupported by medical records and "appears to be based primarily on [the claimant's] subjective complaints of pain." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Lacina v. Comm'r of Soc. Sec.*, 606 F. App'x 520, 528 (11th Cir. 2015) (finding no error in the ALJ's discrediting a medical opinion because it relied heavily on the claimant's subjective reports of symptoms and limitations); *Huntley v. Comm'r of Soc. Sec.*, No. 16-12975, 2017 WL 1164354, at *2 (11th Cir. 2017) (affirming the ALJ's decision to assign little weight to examining physicians' opinions because their opinions were conclusory, unsupported by their medical examinations, and "relied upon [the claimant's] subjective complaints").

For example, the Eleventh Circuit recently affirmed the ALJ's affording little weight to an examining physician's opinion because the opinion was inconsistent with other medical evidence. *Lacina*, 606 F. App'x at 527–28. Further, the ALJ found that the opinion relied heavily on the claimant's subjective report of symptoms and limitations. *Id.* The Eleventh Circuit noted that the

opinion "was replete with observations that 'she said . . .'" and there was only one "obviously objective aspect" of the opinion, which was the claimant's social and occupational functioning score. *Id.* at 528, n.8. Defendant argues that Dr. Marone's opinion "did not reveal objective medical findings," and "failed to explain how any objective findings would have caused the limitations he listed." (Dkt. 21 at 11.)

As described above, Dr. Marone's report includes the following components: (1) a summary of his interview with Plaintiff and Plaintiff's father in which they explained to Dr. Marone Plaintiff's treatment for Asperger's and depression and educational, substance abuse, and vocational history; (2) a summary of records provided by Plaintiff's disability representative, including his school psychological evaluations and testing dating from 1980 and records from his substance abuse treatment and treatment for Asperger's and depression; (3) Plaintiff's and Plaintiff's father's reports of Plaintiff's social and adaptive functioning; and (4) results of a mental status examination and intelligence test. (Tr. 440–46.) Dr. Marone concluded that Plaintiff would not be able to sustain employment for even short periods of time, would have a "laboriously slow" work rate and confrontational interactive style if he does work. (Tr. 445.) Further, he found Plaintiff would need "significant supervision in everyday living" due to "pervasive immaturity." (Tr. 445.) In so concluding, Dr. Marone summarized Plaintiff's history of learning, behavioral, and emotional challenges, substance abuse, and current treatment for Asperger's, depressive disorder, and cocaine dependence. (Tr. 444.) He also based these conclusions on Plaintiff's reports of difficulty sustaining employment due to his work performance and social conduct. (Tr. 444.)

While Dr. Marone's opinion does rely on Plaintiff's and Plaintiff's father's reports of Plaintiff's limitations, substantial evidence does not support the ALJ's finding that Dr. Marone

"relied quite heavily" on and "seemed to uncritically accept as true most, if not all of what the claimant reported." (Tr. 31.) Unlike *Lacina*, where the discredited opinion cited only one supporting objective basis, 606 F. App'x 528, n.8, Dr. Marone's opinion contains consideration of more than the subjective reports of Plaintiff and Plaintiff's father, namely Plaintiff's educational and medical treatment records and the results of mental status and intelligence tests. Accordingly, remand is appropriate for the ALJ to consider Dr. Marone's opinion, specify the weight he accords it, and explain his reasons for assigning such weight. As mentioned above, *see* discussion *supra* § A, to the extent the ALJ's reconsideration of Dr. Marone's opinion affects the ALJ's assessment of Plaintiff's RFC, any additional limitations should be incorporated into the ALJ's RFC assessment.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **REVERSED** in part and the case is **REMANDED** under sentence four of 42 U.S.C. 405(g) for further proceedings consistent with this Order.

2. The Clerk of Court is directed to enter judgment consistent with this Order.

**DONE** and **ORDERED** in Tampa, Florida, on August 4, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record